UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DAVID RAMOS DIAZ,

        Defendant.

_____/

No. 1:26-cr-00011

Hon. Hala Y. Jarbou
Chief U.S. District Judge

## GOVERNMENT'S TRIAL BRIEF

The United States has charged the defendant with threats that he made to kill the President of the United States on or about December 17, 2025.   (R.1: Indictment, PageID.1-2.)   The United States respectfully submits this trial brief to provide a summary of the facts the government intends to prove and to highlight legal issues that may arise at trial.

## FACTUAL BACKGROUND

On December 17, 2025, an unknown male caller, later identified as Diaz, utilizing telephone number 517-465-4027, called the United States Secret Service Grand Rapids Resident Office and left a voicemail stating, "I wanna kill mother fucker Donald Trump, okay. Ah, he's dead, he's dead, okay. In 24 hour he's gonna be dead, okay. Bye Bye."

Also on December 17, 2025, the United States Secret Service Protective Intelligence Division received two emails from the Executive Office of the President

reporting two threatening electronic communications from the email davediazprvb@gmail.com to WhiteHouse.gov. The first message contained the subject line "Contact the President" and the message "I would hill [sic] this mother fukr hijo the puta."

---------- Forwarded Email ----------
From: davediazprvb@gmail.com
Sent: Wednesday, December 17, 2025
Subject: Contact the President

| | |
|---|---|
| PREFIX: | Mr. |
| FIRST: | Dave |
| LAST: | David Diaz |
| ADDR1: | 713 Baker Street |
| CITY: | Lansing |
| STATE: | MI |
| ZIP: | 48910 |
| COUNTRY: | USA |
| EMAIL: | davediazprvb@gmail.com |
| PHONE: | 5174654027 |
| SUBJECT: | Contact the President |
| IP ADDRESS: | 2607:fb91:1007:cf78:ddd3:8ff8:d6f7:88a |

I would hill this mother fuckr hijo the puta

The second message said "I will kill you. You're so nasty and disgusting person you're so dead mother fukr."

---------- Forwarded Email ----------
From: davediazprvb@gmail.com
Sent: Wednesday, December 17, 2025
Subject: Contact the President

| | |
|---|---|
| PREFIX: | Mr. |
| FIRST: | Dave |
| LAST: | David Diaz |
| ADDR1: | 713 Baker Street |
| CITY: | Lansing |
| STATE: | MI |
| ZIP: | 48910 |
| COUNTRY: | USA |
| EMAIL: | davediazprvb@gmail.com |
| PHONE: | 517-465-4027 |
| SUFFIX: | Jr. |
| SUBJECT: | Contact the President |
| IP ADDRESS: | 2607:fb91:1007:cf78:ddd3:8ff8:d6f7:88a |
| APPELLATION: | USA |

I will kill you. You&#39;re so nasty and disgusting person you&#39;re so dead mother fuckr

Diaz included his true name, last known address, and phone number in the communications to WhiteHouse.gov.

In response to the threats, the Secret Service on December 17, 2025, conducted investigative searches of public records and learned that the telephone number belonged to Diaz and was serviced by T-Mobile. Open-source searches for the IP address associated with the WhiteHouse.gov submissions resolved to Detroit, Michigan and appeared to be owned by T-Mobile. Requests submitted to T-Mobile returned basic subscriber information regarding the account. According to this information, the phone number associated with the account belonged to Diaz, with an account address of 713 Baker Street, Lansing, Michigan. The disclosure also provided a cellular ping location associated with the device which resolved to Holt, Michigan. As set forth in more detail below, Diaz was known to the Secret Service as

someone who had previously made threatening statements about the President.

Also on December 17, 2025, agents called 517-465-4027 and left a message but received no response.   At the request of the Secret Service, Lansing Police contacted the Baker Street address and spoke to a female who said that Diaz uses the address for mail but does that liver there and she did not know his whereabouts.   Agents contacted then contacted Lansing Police.

On December 17, 2025, Agents sent a "Be on the Lookout" bulletin about Diaz to Ingham County Central Dispatch with a request to be notified if Diaz was located. On December 19, 2025, the Ingham County Sheriff's Office notified the U.S. Secret Service that Diaz had been arrested on an outstanding warrant out of Ingham County for failure to appear for a damage to property case.

On December 19, 2025, Secret Service SA Adam Rogers conducted a *Mirandized* interview of Diaz at the Ingham County Jail. Diaz said "yes" to being the owner of telephone number 517-465-4027 and the [davediazprvb@gmail.com](mailto:davediazprvb@gmail.com) email account.   Diaz confirmed that he wrote the threatening communications described above to the WhiteHouse.gov account and left the voicemail with U.S. Secret Service Grand Rapids. When asked why he made the statements, Diaz said, "Somebody has to do something" and "He can say anything" referencing President Trump.   Diaz said he believed President Trump was uncaring and did not care about the people of America based on his (President Trump's) comments about the death of actor and director Rob Reiner.   He denied that his animus for President Trump was based on the President's party affiliation or the broader work done by the Trump

administration.    Instead, Diaz reiterated that his dislike of the President was due to the President's leadership style and who he is as a person.

## Previous Conduct

On January 10, 2024, Diaz called the U.S. Secret Service Washington Field Office duty desk utilizing the phone number 517-582-8236 and said that "Trump is going to die in 2 hours." Diaz then called the U.S. Secret Service Miami duty desk and said the former president would be dead within 24 hours.   Special Agent David Dobbs called 517-582-8236 and Diaz answered, provided his full name, and said he lived in East Lansing.   He denied making any threats to kill the former President of the United States, although he said he wouldn't mind if someone did kill him because he didn't like him.

On February 19, 2025, Diaz called the U.S. Secret Service Chicago duty desk utilizing phone number 517-582-8236 and said that if Donald Trump comes to Michigan he will be killed. Diaz said he would be the one to kill the President if he comes to Michigan. Diaz said "I don't want to kill him (referring to the President), but if he comes (to Michigan), he is dead. Don't let him come." Diaz provided his name but refused to provide an address or city of residence in Michigan. Diaz confirmed his phone number is 517-582-8236. Diaz had an accent and said he is Puerto Rican.

On October 25, 2025, Diaz called the FBI National Threat Operations Center (NTOC) utilizing telephone number 517-465-4027 and expressed an interest in killing the president.   He said he wished to voice grievances with President of the United States, Donald Trump. Diaz referred to the president as a "motherfucker" and said,

"why is he doing this fucking shit to us?" in reference to food stamp benefits. Diaz said that should the president go golfing again, "something is going to happen," followed by the statements, "I wish I can do something" and "maybe it's a threat." Diaz later clarified and said he intended to kill the president; however, Diaz said he "knows that he can't" and "does not have that power." Diaz confirmed he does not possess firearms or weapons but wished he could obtain them. Diaz proclaimed his disagreement with the fact that the president can seemingly threaten others, but he as an American citizen is unable to threaten the president.   Diaz made the October 2025 phone call using the same phone number he used to make the threats in the indictment.   T-Mobile subscriber information for that number establishes that the phone belongs to Diaz.

## ELEMENTS OF THE CRIMES

On February 3, 2026, Diaz was charged in a four-count indictment related to his threats against the President.   Counts One and Three charge Diaz with making threats to take the life of or to inflict bodily harm upon the President of the United States, in violation of 18 U.S.C. § 871.   Counts Two and Four charge Diaz with transmitting communications in interstate commerce that contained a threat to injure the person of another, in violation of 18 U.S.C. § 875(c).

The elements of a violation of 18 U.S.C. § 871 are: (1) the defendant threatened to take the life of, or to inflict bodily harm upon, the President of the United States; and, and (2) the defendant did so knowingly and willfully.   The word "threat" means

a statement that is a serious expression of intent to inflict bodily harm that a reasonable observer would perceive to be an authentic threat.   To qualify as a threat, the statement need not be communicated to the President of the United States.   The government must show that the defendant had some understanding of the threatening nature of his statements.   It is sufficient to show that the defendant recklessly disregarded a substantial risk that his communication would be viewed as threatening to take the life of, or to inflict bodily harm upon the President.   The government need not prove that the defendant intended to carry out the threat or was capable of carrying out the threat at the time it was made, made the President of the United States feel threatened, or that the President of the United States knew about the threat against him. *See* 18 U.S.C. § 871; *Sixth Circuit Pattern Jury Instruction* 18.01.

The proposed jury instruction was amended to comply with *Counterman v. Colorado*, 600 U.S. 66 (2023). In that case, the Supreme Court held that the First Amendment requires that the government must prove that "the defendant had some understanding of his statements threatening character" in order to be convicted of making a true threat.   *Id.* at 73.   The Court also held that the mens rea requirement is satisfied by a recklessness standard:

> The question presented is whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements. We hold that it does, but that a mental state of recklessness is sufficient. The State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed a threatening violence. *Id.* at 69.

7

The elements of a violation of 18 U.S.C. § 875(c) are: (1) the defendant knowingly transmitted a communication; (2) the communication contained a threat to injure a particular person; (3) the defendant transmitted the communication for the purpose of making a threat, or knowing the communication would be viewed as a threat, or recklessly disregarding a substantial risk that his communications would be viewed as a threat; and (4) the communication was transmitted in interstate commerce.   The word "threat" means a statement that is a serious expression of intent to inflict bodily harm on a particular person that a reasonable observer would perceive to be an authentic threat.   To qualify as a threat, the statement need not be communicated to the targeted individual. The government must show that the defendant had some understanding of the threatening nature of his statements.   It is sufficient to show that the defendant recklessly disregarded a substantial risk that his communication would be viewed as threatening violence.   To transmit something in interstate commerce merely means that communication travelled across a state line.   The government need not prove that the defendant knew that the communication would be transmitted across state lines.   The government need not prove that the defendant intended to carry out the threat or was capable of carrying out the threat at the time it was made, made the targeted individual feel threatened or that the targeted individual knew about the threat against him.

*Sixth Circuit Pattern Jury Instruction* 18.01, amended to comply with *Counterman v. Colorado*, 600 U.S. 66 (2023).

The defense seeks to add the following language to the definition of a "threat"

8

in both instructions:

> When determining how a reasonable observer would perceive a statement, you should examine the context and circumstances in which a statement was made.   Mere political hyperbole is not a threat.

That request should be denied. The government's proposed instruction on the word "threat" comes directly from pattern jury instruction 18.01.   That definition does not include the proposed language.   According to the commentary to the pattern jury instruction, this definition is based on case law defining a "true threat" that is not protected by the First Amendment.   *See Counterman v. Colorado*, 143 S. Ct. 2106, 2113-2117 (2023) (addressing First Amendment limits in the context of a state "stalking" statute); *Virginia v. Black*, 538 U.S. 343, 359 (2003); *Watts v. United States*, 394 U.S. 705, 708 (1969).   *See also United States v. Howard*, 947 F.3d 936, 946 (6th Cir. 2020) (approving instruction that jury should consider "whether in light of the context a reasonable person would believe that the statement was a serious expression of an intention to inflict bodily injury"); *United States v. Doggart*, 906 F.3d 506, 510 (6th Cir. 2018); *United States v. Houston*, 683 F. App'x 434, 438 (6th Cir. 2017) (unpublished), *citing United States v. Alkhabaz*, 104 F.3d 1492, 1495 (6th Cir. 1997), *abrogated in part by Elonis, supra* and *United States v. Jeffries*, 692 F.3d 473, 477-478 (6th Cir. 2012), *abrogated in part by Elonis, supra.*

The specific words in the first part of the definition ("a serious expression of intent to inflict bodily harm on a particular person [a particular group of individuals])" are drawn from *Virginia v. Black*, 538 U.S. at 359; the specific words in the second part of the definition ("that a reasonable observer would perceive to be

9

an authentic threat") are drawn from *Doggart*, 906 F.3d at 511 ("The relevant question is whether a reasonable observer would take [the] words to be an authentic threat.").

## TRIAL ISSUES

### I.    Anticipated Number of Witnesses

With the current expected stipulations, the government believes that it will call five witnesses at trial.  To begin, the government will call a contractor of the U.S. Secret Service who is expected to authenticate Diaz's call, the voicemail he left, and testify that the call travelled in interstate commerce from Michigan to a U.S. Secret Service "SIP trunk" located in Washington, DC, and was then routed through one of two data centers utilized to service the account located either in Irvine, Texas or Culpepper, Virginia.  The government expects to call two witnesses to testify to the threatening message Diaz sent to the WhiteHouse.gov website, followed by a law enforcement witness who will testify about his investigation of the case and his interview of Diaz.   If the Court grants the government's request under Fed. R. Evid. 404(b) to allow evidence of Diaz's prior threatening conduct, the government will call five additional witnesses to authenticate those threats and describe the investigation of them.  The government reserves its right to call other witnesses as needed as a matter of trial strategy.

### II.    Party Admissions

Diaz's phone call to the U.S. Secret Service, message to the WhiteHouse.gov website, and *Mirandized* statement are party admissions admissible under to Federal

Rule of Evidence 801(d)(2)(A).   Diaz is not entitled to subsequently admit other portions of his out-of-court statements. Rule 801(d)(2)(A)'s exception is limited to the admission of statements made by a party *against* that party. This rule "does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses." *United States v. McDaniel*, 398 F. 3d 540, 545 (6th Cir. 2005) (italics in original).

Without this restriction, "parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *Id.* (citing *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). This limitation does not violate the Confrontation Clause or the "rule of completeness." *United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014) ("[T]he rule of completeness is not designed to make something admissible that should be excluded. Right or wrong, this court has acknowledged that .. . exculpatory hearsay may not come in solely on the basis of completeness.") (quotations and citations omitted).   The only way that Diaz can offer his own statements into evidence is to take the stand and be subject to full and complete cross examination.

III.    Intoxication and Diminished Capacity are Not Relevant

Defense counsel has not provided notice pursuant of an insanity defense under Fed. R. Evid. 12.2(a), diminished mental capacity under Rule 12.2(b), or that it will seek to introduce expert evidence of a mental condition.   In any event, any evidence of diminished capacity and intoxication are not relevant and should be excluded

11

because both 18 U.S.C. § 871 and § 875(c) are general intent crimes. *See United States v. Vincent*, 681 F.2d 462, 464 (6th Cir. 1982) (18 U.S.C. § 871); *United States v. DeAndino,* 958 F.2d 146, 149 (6th Cir.1992) (reversed on other grounds). In *United States v. Gonyea*, 140 F.3d 649, 650 (6th Cir. 1998), the court held that "a specific intent crime is one that requires a defendant to do more than knowingly act in violation of the law. The defendant must also act with the purpose of violating the law. The violation of a general intent crime, by contrast, requires only that a defendant 'intend to do the act that the law proscribes.'" *Gonyea*, 140 F.3d at 653 (citations omitted).

A "diminished capacity" defense applies "where the defendant claims only that his mental condition is such that he or she cannot attain the culpable state of mind required by the definition of the crime." *United States v. Kimes*, 246 F.3d 800, 806 (6th Cir. 2001) (internal citation and quotation marks omitted). While courts "permit the introduction of evidence of diminished capacity for the purpose of negating the *mens rea* element of certain crimes . . . [the Sixth Circuit has] adhered to the view that 'diminished capacity may be used only to negate the mens rea of a *specific intent* crime.'" *Id.* (quoting *Gonyea*, 140 F.3d at 650) (emphasis in original). Accordingly, Defendant's mental state is not relevant.

Any evidence of intoxication is likewise irrelevant because it is not a defense to a general intent crime.  *See United States v. Veach*, 455 F.3d 628, 631 (6th Cir. 2006) (voluntary intoxication no defense to general intent crimes) (citing *Gonyea*, 140 F.3d at 650); *United States v. Kimes*, 246 F.3d 800, 806 (6th Cir. 2001) (intoxication

not a defense to 18 U.S.C. § 111).

IV.    Opinion Testimony

The government anticipates that it will call Michael Rustin, a Telecommunications Specialist, who is expected to testify that Diaz's call to the Secret Service in Grand Rapids travelled in interstate commerce from Michigan to a U.S. Secret Service "SIP trunk" located in Washington, DC, and was then routed through one of two data centers utilized to service the account located either in Irvine, Texas or Culpepper, Virginia.   Numerous cases have held that this type of evidence is not opinion testimony. *See, e.g., United States v. Nolde*, No. 8:24-CR-23, 2026 WL 323299, at *4 (D. Neb. Feb. 6, 2026); *United States v. Woods*, No. 5:17-CR-50010, 2017 WL 5892205, at *1 (W.D. Ark. Nov. 29, 2017) (permitting an employee to testify about the physical location of his company's servers and explaining that the "Court sees no reason why identifying the physical location of Endpoint Exchange's servers would require 'scientific, technical, or other specialized knowledge within the scope of Rule 702' " (quoting Fed. R. Evid. 701(c))); *United States v. Clinesmith*, No. 23-20063-01-DDC, 2026 WL 70347, at *4 (D. Kan. Jan. 9, 2026) (holding that the government satisfied the "use of interstate wires" element by "adduc[ing] testimony of a Charter Communications representative who testified that each email had to travel across state lines from the defendant's home in Kansas to servers in either Colorado or Pennsylvania").

Nevertheless, to the extent the anticipated testimony is viewed as opinion evidence, the government has provided notice to the defense under Fed. R. Crim. P.

13

16(a)(1)(G). There is no expert report.

V.    Request to Admit Evidence Pursuant to Fed. R. Evid. 404(b)

In its initial pretrial conference summary statement, the government gave notice that it intends to seek permission from the Court to introduce Diaz's prior threatening behavior under Rule 404(b).   Specifically, it seeks to introduce the prior calls he made to the Secret Service and FBI in January 2024, February 2025, and October 2025, which are described above.

Rule 404(b) provides, in relevant part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to provide the character of a person in order to show action in conformity therewith." Such evidence may, however, "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed.R.Evid. 404(b). In deciding whether to admit evidence under this rule, the Court must apply the balancing test of Federal Rule of Evidence 403. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."

To determine whether other acts evidence is admissible, the Court undertakes a four-part inquiry: (1) the government must identify the specific purpose for which the evidence is being offered; (2) the court must determine whether the identified purpose is relevant to a material issue; (3) the court must weigh the evidence under Rule 403; and (4) the court must "clearly, simply, and correctly" instruct the jury as to the specific purpose for which it may consider the evidence. *United States v. Wells,*

14

211 F.3d 988, 999–1000 (6th Cir.2000).The court does not have to make a preliminary finding that the "other acts" occurred. *United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011) (citing *Huddleston v. United States*, 485 U.S. 681, 688-89 (1988)). It is sufficient if the jury can reasonably conclude that the defendant committed the acts. *United States v. Trujillo*, 376 F.3d 593, 605 (6th Cir. 2004) (applying *Huddleston*). Witness testimony is sufficient for that purpose. *Id.*

As set forth above, the government must prove Diaz made his statements for the purpose of making a threat, or knowing the communication would be viewed as a threat, or recklessly disregarding a substantial risk that his communications would be viewed as a threat. Proof of knowledge and intent are proper purposes listed in Rule 404(b), as is absence of mistake or accident. "Evidence of a defendant's knowledge or intent regarding the current offense is such a proper purpose." *United States v. Matthews*, 440 F.3d 818, 829 (6th Cir. 2006).

In *United States v. Censke*, 449 F. App'x 456, 468 (6th Cir. 2011) the Sixth Circuit held, in an 18 U.S.C. § 875(c) prosecution, that evidence of the defendant's prior threats were properly admitted under Rule 404(b) as proof of knowledge. The Censke court noted that the "other acts" evidence served to establish the defendant had knowledge that his communications would be viewed as threatening and to rebut a defense that he made the statements were political and he made the statements in a joking manner. *Id.*

Here, Diaz has put intent in issue by pleading not guilty. The government anticipates he may raise similar defenses to those raised by the defendant in Censke,

15

namely, that his statements were political hyperbole or that he lacked any sort of knowledge that his communications would be viewed as threatening.  That puts knowledge, intent, and absence of mistake clearly at issue.  The fact that his prior calls elicited a response directly from the Secret Service is therefore relevant to his knowledge and absence of mistake – proper purposes under Rule 404(b).

VI.    The Defendant's Prior Convictions

Diaz was convicted in of 2022 felony assault with a dangerous weapon, in violation of MCL 750.82. In 2025 he was convicted of retail fraud third degree, in violation of MCL 750.356(d)(4).    If the defendant chooses to testify, the government believes his convictions are admissible pursuant to Federal Rule of Evidence 609.   The Court must determine under Rule 609(a)(1)(B) that "the probative value of the evidence outweighs its prejudicial effect to the defendant."   The Court can combat any alleged prejudice with a cautionary instruction. *See United States v. Moore*, 917 F.2d 215, 235 (6th Cir. 1990) (no abuse of discretion where defendant's prior conviction for a similar crime was used to impeach credibility where a cautionary instruction was given).

 If the defendant does not choose to testify, the government does not believe his convictions would be admissible except in unusual circumstances, such as the defendant introducing character evidence.

**CONCLUSION**

The government believes that the evidence presented in this trial will be sufficient to convict the defendant beyond a reasonable doubt.   The government

looks forward to answering any questions that the Court may have at the final pretrial conference on May 6, 2026.

<div style="margin-left: 50%;">

Respectfully submitted,

TIMOTHY VERHEY
United States Attorney

</div>

Date: April 29, 2026

<div style="margin-left: 50%;">

/s/ Clay Stiffler
CLAY STIFFLER
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

</div>

17