UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

DAVID RAMOS DIAZ,

       Defendant.

_____/

Case No. 1:26-cr-011

Hon. Hala Y. Jarbou
Chief United States District Judge

### DEFENDANT'S TRIAL BRIEF

The defendant, David Diaz, through his attorneys, Samuel Roddy and Marcus Miller, Assistant Federal Public Defenders, submits this brief in anticipation of trial. Mr. Diaz is charged with two counts of threats against the president in violation of 18 U.S.C. § 871 and two counts of threatening communications in interstate commerce in violation of 18 U.S.C. § 875(c). Mr. Diaz pleads not guilty to the charges and stands on the presumption of innocence afforded to him by the United States Constitution and his right to hold the government to its burden to prove his guilt beyond a reasonable doubt.

### Evidentiary and Trial Issues

**a) Outstanding Evidentiary Issues**

The government indicated that they may offer evidence of other threats under F.R.E. 404(b). When the defense receives formal notice that complies with F.R.E. 404(b)(3), we may respond if necessary to avoid delay at trial.

**b) *Jencks* Material**

The defense requested *Jencks* material from the government.  Defense has likewise requested the provision of a witness list in order to better streamline and prepare for trial. The defense requests provision of any outstanding statements pursuant to Fed. R. Crim. P. 26.2, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.  Defense also requests that the Court order disclosure of any witnesses' identities in a timely fashion prior to trial.  Defense would, if so ordered, also reciprocate. Specifically, the defense requests any Grand Jury testimony of potential witnesses that may be called at trial, as that testimony of government witnesses may or may not be consistent with in-court testimony or other out-of-court statements.

While Fed. R. Crim. P. 26.2 only mandates provision of this material after the witness for the government has been called to testify, early disclosure of such evidence would diminish the necessity for a recess to examine the statement pursuant to Fed. R. Crim. P. 26.2(d), streamline the trial, potentially resolve outstanding issues, and provide the defense with adequate opportunity to prepare for trial. "Because only the defense is adequately equipped to determine the effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them to determine what use may be made of them. Justice requires no less." *Jencks v. United States*, 353 U.S. 657, 668–69 (1957). The defense maintains that failure to provide these materials until the government's witnesses have testified in open court at the trial is contrary to the previously mentioned due process

clauses of the Constitution as set forth in *Jencks v. United States*, notwithstanding the passage of the Jencks Act, 18 U.S.C. § 3500.

### c) Experts

On April 24, 2026, the government provided disclosures concerning their intent to call a secret service agent from the Secret Service Voice Program Branch as an expert witness who can provide testimony regarding how phone calls received at the Grand Rapids Secret Service office constitute interstate communications. As of this time we do not foresee an objection to this testimony.

### d) Stipulations

Defense has conferred with the government and agreed to several stipulations. Importantly, Mr. Diaz does not intend to contest that Mr. Diaz made the statements he has been charged with. Defense believes that, if convicted, Mr. Diaz may qualify for some credit for acceptance of responsibility under application note 2 of the U.S. Sentencing Guidelines manual § 3E1.1.

### e) Jury Instructions

As noted in the joint proposed jury instructions, ECF No. 23, PageID.65 and 67, defense is asking that two additional sentences be added to the definition of "threat" in section 18.01. Specifically, defense requests that "threat" be defined as:

> The word "threat" means a statement that is a serious expression of intent to inflict bodily harm that a reasonable observer would perceive to be an authentic threat. *When determining how a reasonable observer would perceive a statement, you should examine the context and circumstances in which the statement was made. Mere political hyperbole is not a threat.* To qualify as a threat, the statement need not be communicated to the President of the United States.

The proposed language is italicized.

This language is supported by caselaw and is necessary for the factfinder in this case. For the first sentence, a wall of Sixth Circuit precedent repeatedly references the importance of considering the context and circumstances surrounding a statement when determining whether the statement is a "true threat." *See United States v. Jeffries*, 692 F.3d 473, 480 (6th Cir. 2012) (explaining that the "reasonable person" standard "forces juries to examine the circumstances in which a statement is made" because "[a] juror cannot permissibly ignore contextual cues in deciding whether a 'reasonable person' would perceive the charged conduct 'as a serious expression of an intention to inflict bodily harm'"), overruled on other grounds by *Counterman v. Colorado*, 600 U.S. 66, 77-78 (2023); *United States v. Glover*, 846 F.2d 339, 343 (6th Cir. 1988) (explaining that § 871 requires "that the defendant intentionally make a statement, written or oral, in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of the President" (emphasis omitted) (quoting *United States v. Vincent*, 681 F.2d 462, 464 (6th Cir. 1982)). *See also United States v. Doggart*, 906 F.3d 506, 511 (6th Cir. 2018) (observing that "[n]othing about the context of the statement suggested [the defendant] was joking," "was engaged in some kind of bigoted rant," or that the statement "was a passing fancy").

Other circuits also recognize the role context plays in the inquiry. *See, e.g.*, *United States v. Whiffen*, 121 F.3d 18, 20-21 (1st Cir. 1997) (holding "true threat" must be determined objectively "from all the surrounding facts and circumstances"); *United States*

4

*v. White*, 810 F.3d 212, 219 (4th Cir. 2016) (explaining that a "true threat" is "one that a reasonable recipient who is familiar with  the circumstances would interpret as a serious expression of an intent to do harm"); *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008) ("The jury was properly instructed that [defendant]'s statements qualified as a true threat if a reasonable person would understand that the statements, in their context and under all the circumstances, would be interpreted as 'a serious expression of an intention to use a weapon of mass destruction to damage the Reuss Federal Plaza.'"); *United States v. Christenson*, 653 F.3d 697, 701 (8th Cir. 2011) ("The government must establish that a reasonable recipient, familiar with the context of the communication at issue, would interpret it as a threat[.]"); *United States v. Wheeler*, 776 F.3d 736, 743 (10th Cir. 2015) ("Determining whether a statement amounts to a true threat requires 'a fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant.'"(quoting *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1167–68 (10th Cir. 2009)).

In support of the second proposed sentence we rely on *Counterman*, 600 U.S. at 74 and *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001).

Mr. Diaz's proposed instructions are substantially similar to other circuits' model instructions on a "true threat." *See* Pattern Crim. Jury Instr. 5th Cir. 2.38 (2024) ("A 'threat' is a serious statement expressing an intention to kill, kidnap, or injure the President . . . which under the circumstances would cause apprehension in a reasonable person, as distinguished from words used as mere political argument, idle talk, exaggeration, or something said in a joking manner."); Fed. Crim Jury Instr. 7th Cir. THREAT1 (2023 ed.)

5

("A 'true threat' is a serious expression of intent to commit unlawful physical violence against another person or a group of people. The communication must be one that a reasonable observer, considering the context and circumstances of the statement, including surrounding communications, would interpret as a true threat. . . . A communication is not a true threat if it is merely idle or careless talk, exaggeration, or something said in a joking manner."); Model Crim. Jury Instr. 8th Cir. 6.18.875C (2026) (explaining the jury "may consider all the circumstances surrounding the making of the [communication] [message]. For example, you may consider the language, specificity, and frequency of the threat[s]; the context in which the threat was made; the relationship between the defendant and the threat recipient; the recipient's response; any previous threats made by the defendant; and, whether you believe the person making the statement was serious, as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner"); Pattern Crim. Jury Instr. 11th Cir. OI O29 (2025) ("A 'true threat' is a serious threat — not idle talk, a careless remark, or something said jokingly — that is made under circumstances that would lead a reasonable person to believe that the Defendant intended to [kill] [kidnap] [inflict bodily harm upon] the President.").

Without these two proposed sentences, the jury would be deprived of having clear guidance on how it can determine whether something is "a serious expression of intent to inflict bodily harm that a reasonable observer would perceive to be an authentic threat." Without a line explicitly telling the jury that it may consider context and circumstances, the jury may be under the false understanding that it is cabined to only considering the literal words used. Thus, this Court should give these two proposed sentences. They are

6

correct statements of the law, the jury instructions do not otherwise adequately cover the proposed language's substance, and the proposed sentences are important to Mr. Diaz's defense. *See United States v. Heath*, 525 F.3d 451, 456 (6th Cir. 2008).

Respectfully submitted,

SEAN R. TILTON
Federal Public Defender

Dated: April 29, 2026

/s/ Samuel Roddy
SAMUEL RODDY
Assistant Federal Public Defender
50 Louis NW, Suite 300
Grand Rapids, Michigan 49503
(616) 742-7420

Dated:  April 29, 2026

/s/ Marcus Miller
MARCUS MILLER
Assistant Federal Public Defender
50 Louis, NW, Suite 300
Grand Rapids, Michigan 49503
(616) 742-7420